[Cite as *Huntington v. Yeager*, 2014-Ohio-4151.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THE HUNTINGTON NATIONAL BANK SUCCESSOR BY MERGER TO SKY BANK, | ) ) ) | |
| | ) | CASE NO. 13 HA 7 |
| PLAINTIFF, | ) | |
| | ) | OPINION |
| V. | ) | |
| | ) | |
| NATHAN M. YEAGER, ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas of Harrison County, Ohio
Case No. CVE-2012-0011

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellant          Attorney Kristen S. Moore
Mariemont Properties             Millennium Centre-Suite 300
                                 200 Market Avenue North
                                 Canton, Ohio 44701-4213

For Defendants-Appellees         No brief filed

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 19, 2014

DONOFRIO, J.

{¶1} Plaintiff-appellant, Mariemont Properties, appeals from a Harrison County Common Pleas Court judgment denying its Motion to Amend Entry Confirming Sale and Ordering Deed and Distribution, in which appellant requested that the court distribute excess proceeds from the sale of certain property to it rather than to the debtor alleging the debtor fraudulently increased the sale price by "bidding up" the property.

{¶2} In 2010, Huntington National Bank commenced a foreclosure action against defendants-appellees, Nathan Yeager and Jeremiah Yeager. The Yeagers' property was foreclosed upon and ultimately went to a foreclosure sale on October 29, 2012.

{¶3} Van Oliver, appellant's president, attended the foreclosure sale in Harrison County. (Oliver Aff. ¶3). Initially, Oliver and two other bidders were participating. (Oliver Aff. ¶4). One bidder dropped out when the price reached $46,000. (Oliver Aff. ¶6). The other bidder and Oliver continued to bid. (Oliver Aff. ¶6). The other bidder's last bid was $69,000. (Oliver Aff. ¶7). Oliver made the winning bid of $70,000 on appellant's behalf. (Oliver Aff. ¶7). Oliver later discovered that the other bidder was actually Jeremy [sic.] Yeager, one of the property's debtors. (Oliver Aff. ¶9).

{¶4} After the debts and obligations were paid, excess proceeds of $19,954.76 remained from the sale. Thus, $50,045.24 was required to pay off the judgment, costs, and interest.

{¶5} The trial court issued an entry Confirming Sale and Ordering Deed on March 4, 2013. Therein the court ordered the sheriff to retain the $19,954.76 "surplus" until further order.

{¶6} On June 3, 2013, the trial court issued a judgment entry stating that any party could submit a request for the release of the surplus funds.

{¶7} On June 28, 2013, appellant filed a Motion to Amend Entry Confirming Sale and Ordering Deed and Distribution. Appellant asserted that the "other bidder" at the foreclosure sale was actually Jeremiah Yeager. It stated that Yeager bid on

the property up to $69,000 in order to inflate the sale price of the property. Appellees did not file a response in opposition nor did they file a request for the surplus funds.

{¶8} The trial court overruled appellant's motion. It stated that the foreclosure statute required it to release the surplus to the clerk of courts, who in turn was to notify the debtor. Following the statutory procedure, once the debtor reimbursed the clerk for its costs, the clerk was to release the surplus funds to the debtor. The court noted that appellant's position, that the debtor in a foreclosure should never be allowed to participate in the public sale, might be a valid concept. But nothing in the Ohio Revised Code prohibits such action. It stated that the Revised Code provides for a "public" auction and expressed that the court could not pick and choose who could be permitted to participate in the auction. Therefore, the court ordered the sheriff to release the surplus to the clerk of courts. It further ordered the clerk of courts to follow the procedures set out in R.C. 2329.44 for providing notice to the debtor.

{¶9} Appellant filed a timely notice of appeal on August 14, 2013. On appellant's request, the trial court stayed the distribution of the excess funds pending this appeal.

{¶10} Appellee has failed to file a brief in this matter. Therefore, we may consider appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain that action. App.R. 18(C).

{¶11} Appellant raises a single assignment of error stating:

THE TRIAL COURT ERRED IN FAILING TO AMEND ITS ENTRY CONFIRMING THE SALE AND ORDER THAT THE FUNDS FRAUDULENTLY OBTAINED BY THE DEBTOR BE DISTRIBUTED TO MARIEMONT PROPERTIES, INC.

{¶12} Appellant argues the trial court has authority to alter foreclosure sales resulting from fraud or inequitable circumstances. It asserts the court can reject or set aside a sale when "bidding irregularities" occur. Appellant contends that when a

property owner drives up the purchase price, this constitutes fraud and the court can step in to cure the resulting inequity.  Here, appellant asserts, Jeremiah Yeager was not a bona fide bidder.  Had he wanted to, and been able to afford to, Yeager could have exercised his statutory right to redeem the property for approximately $50,000 at any time prior to the confirmation of sale.

**{¶13}** Appellant asks that we fashion an equitable remedy in this case.  It requests that we not permit the debtor to profit in this case from his actions in fraudulently inflating the sale price.  Appellant asks that we order the trial court to amend its entry confirming sale to reflect a sale price of $50,045.24 and to direct the sheriff to return the remaining $19,954.76 to appellant.

**{¶14}** In overruling appellant's motion, the trial court relied on R.C. 2329.44, which provides in part:

(A) On a sale made pursuant to this chapter, if the officer who makes the sale receives from the sale more money than is necessary to satisfy the writ of execution, with interest and costs, the officer who made the sale shall deliver any balance remaining after satisfying the writ of execution, with interest and costs, to the clerk of the court that issued the writ of execution. The clerk then shall do one of the following:

(1) If the balance is twenty-five dollars or more, send to the judgment debtor whose property was the subject of the sale a notice that indicates the amount of the balance, informs the judgment debtor that he is entitled to receive the balance, and sets forth the procedure that the judgment debtor is required to follow to obtain the balance. This notice shall be sent to the judgment debtor at the address of the judgment debtor in the caption on the judgment or at any different address he may have provided, by certified mail, return receipt requested, within ninety days after the sale. If the certified mail envelope is returned with an endorsement showing failure or refusal of

delivery, the clerk immediately shall send the judgment debtor, at the address of the judgment debtor in the caption on the judgment or any different address he may have provided, a similar notice by ordinary mail. If the ordinary mail envelope is returned for any reason, the clerk immediately shall give a similar notice to the judgment debtor by an advertisement in a newspaper published in and of general circulation in the county, which advertisement shall run once a week for at least three consecutive weeks.

* * *

(B)(1) Subject to division (B)(2) of this section, the clerk of the court that issued the writ of execution, on demand and whether or not the notice required by division (A)(1) or (2) of this section is provided as prescribed, shall pay the balance to the judgment debtor or his legal representatives.

**{¶15}** The trial court determined that this language was mandatory and although it had "no intention of approving or justifying Jeremy [sic.] Yeager's actions" it was bound by the statute. Thus, the court's ruling on appellant's motion strictly follows the statute's requirements. The court ordered the sheriff to release the funds to the clerk of courts, who, in turn, would give notice to the debtor to retrieve the funds.

**{¶16}** The trial court is vested with "a certain discretion which may be utilized in accepting or rejecting bids in land sale proceedings." *Union Savings Assoc. v. Floyd Blackwell, Inc. and Wells*, 9th Dist. Nos. 3083, 3084, 1981 WL 3828 (Jan. 14, 1981). In this case, the trial court followed the applicable and straight-forward statutory procedure. It cannot be said that the trial court abused its discretion in doing so. And while, like the trial court, we cannot agree with Yeager's actions, there is nothing in the statute that prohibited him from bidding at the foreclosure sale.

**{¶17}** Accordingly, appellant's sole assignment of error is without merit.

**{¶18}** For the reasons stated above, the trial court's judgment is hereby

affirmed.

Vukovich, J., concurs with attached concurring opinion.

Waite, J., concurs.

Vukovich J., concurs with attached concurring opinion:

{¶19} I concur with the decision of my colleagues, but write separately to emphasize one point.

{¶20} Even if it a debtor can be considered to have acted fraudulently or improperly by placing bids at the foreclosure sale in amounts more than the redemption price that are not intended to be bona fide bids, there is no procedure for a court (in the foreclosure action) to alter the monetary results of the sheriff's sale. Rather, the only Ohio law provided to this court on the matter of bidding irregularities concerns setting aside the sale. As Mariemont was not interested in having the sale set aside but asked for the court to provide it with surplus funds, the motion was properly denied.